380 So.2d 64 (1980)
STATE of Louisiana
v.
Ricky WASHINGTON.
No. 66101.
Supreme Court of Louisiana.
February 6, 1980.
*65 J. David Garrett, Giddens, McKenzie & Garrett; Paul M. Cooke, Simon, Fitzgerald, Cooke & Reed, Shreveport, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., B. Woodrow Nesbitt, Asst. Dist. Atty., for plaintiff-respondent.
PER CURIAM.
We have granted defendant's application for supervisory writs to review a single question raised below: whether the state may seek the death penalty on retrial of a capital offense in a case where defendant has received a life sentence in the first prosecution and successfully attacked that conviction on appeal. We hold consistent with the accused's constitutional right of appeal in Louisiana, La.Const.1974, Article I, § 16, that the state may not.
Defendant was charged by grand jury indictment with first-degree murder, La. R.S. 14:30; Acts 1976, No. 657, § 1. On October 12, 1979, after trial by jury, he was found guilty as charged. In the sentencing hearing that followed, the jury could not agree on penalty. The trial court accordingly discharged the jury and on October 29, 1979, sentenced defendant to life imprisonment at hard labor as provided by La.C. Cr.P. Art. 905.8. After pronouncing sentence, the court then advised defendant of his right to appeal.
In response to the court's advice, defense counsel filed a motion to determine the effect of that appeal. Counsel explained to the court that "because of the uncertainty of the law right now it is not clear whether or not the state, if a new trial is granted after an appeal.... could seek the death penalty on the second trial . . . we are unable [therefore] to intelligently decide whether to exercise [defendant's] constitutional right to an appeal." The trial court thought the motion premature and denied it.
In granting defendant's application, we agreed with defense counsel that the question here does more than call for an advisory opinion. Defendant has not yet taken his appeal and his fate in that regard as the possibility of retrial remains unsettled. As set forth in In Re Baer, 310 So.2d 537, 538 (La.1975), "[t]his Court will not ordinarily rule upon abstract questions where no practical results can be effectuated by its ruling." See also, Edwards v. Parker, 332 So.2d 175 (La.1976); Abbot v. Parker, 259 La. 279, 249 So.2d 908 (1971);
*66 Aucoin v. Dunn, 255 La. 823, 233 So.2d 530 (1970).
Nonetheless, we take as reasonable defendant's claim that resolution of the question here will influence his constitutional election with respect to appeal of the case. Defendant has received a life sentence in a case that could have brought death. Whether or not he will face a second prospect of death as a measure of success on appeal may well, as a practical matter, enter into his decision to pursue the appeal in the first place. In Re Baer, supra. We therefore reach the merits.
We are satisfied that at the federal level, neither the protection against double jeopardy nor the due process clause absolutely bars the state from seeking the death penalty on retrial after appeal of a capital case in which the defendant has received a life sentence. "At least since 1896, when United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300, was decided," the United States Supreme Court noted in North Carolina v. Pearce, 395 U.S. 711, 719, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969), "it has been settled that [the] constitutional guarantee [against double jeopardy] imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside ... And at least since 1919, when Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103, was decided, it has been settled that a corollary of the power to retry a defendant is the power upon the defendant's reconviction to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction."[1] [emphasis the court].
We are also satisfied that under the analysis in Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), prospect of a more severe sentence on retrial after a successful appeal will not, in the ordinary course, "chill" the accused's right of appeal. Chaffin points out, Id. 93 S.Ct. at 1986 that for those cases in which a realistic apprehension of vindictiveness plays no part, North Carolina v. Pearce, supra, "the likelihood of actually receiving a harsher sentence is quite remote at the time a convicted defendant begins to weigh the question whether he will appeal. Several contingencies must coalesce ... [and] we cannot agree with petitioner that such speculative prospects interfere with the right to make a free choice whether to appeal."
Chaffin, however, did not directly address the issue raised by defendant's application here and we resist its conclusion in the present context. In more recent times, the Supreme Court has itself emphasized that the death penalty is "unique in its severity and irrevocability." Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976). We think that uniqueness decisive here. Weighing the chances for some future increase in the number of years on his sentence, a defendant may well pursue his appeal undeterred. On the other hand, confronted with only two possible sentencing alternatives and a chance of winding up much worse off than before (death for life), the accused may forego his appeal of a life sentence in a capital case and accept what he otherwise feels is an unjust verdict and punishment.
*67 We find, therefore, that a different result in this case would "impair [] to an appreciable extent," Crampton v. Ohio, reported sub nom., McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971), the policies underlying the constitutional right to appeal in Louisiana.[2] Accordingly, we hold that the state may not subject a defendant to a second prospect of death on retrial of a capital case in which he has received a sentence of life imprisonment. This case is therefore remanded to the district court for proceedings not inconsistent with this opinion.
REMANDED.
NOTES
[1] In Stroud v. United States, supra, the defendant was tried for murder three times. The first trial ended with a death sentence; his second, with a sentence to life imprisonment; and his third, in death again. In affirming his last conviction, the Supreme Court rejected counsel's argument that the last trial had placed defendant twice in jeopardy for the same offense. It is not clear from the opinion in Stroud itself whether defendant argued that double jeopardy barred the retrial altogether or only the imposition of the more severe, death sentence. In any event, Pearce would give Stroud a decisive reading, 89 S.Ct. at 2078: "A new trial may result in an acquittal. But if it does result in a conviction, we cannot say that the constitutional guarantee against double jeopardy of its own weight restricts the imposition of an otherwise lawful single punishment for the offense in question." Pearce thus rejected any sentencing analogies to the decision in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) which held that conviction on a lesser included offense operates as an acquittal, for double jeopardy purposes, of the greater crime charged. North Carolina v. Pearce, supra, 89 S.Ct. at 2078, n. 16.
[2] The holding in this case is consistent with the law of Louisiana as it existed prior to the decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Former La.C.Cr.P. Art. 598 provided in pertinent part that "[w]hen a jury returns a verdict of guilty without capital punishment [in a capital case], the defendant cannot thereafter on a new trial be sentenced to death." At the time, prior to Furman v. Georgia, supra, La. C.Cr.P. Art. 817 authorized the return of a qualified verdict of guilty (without capital punishment) in all capital cases. In response to the decision in Furman, the legislature eliminated those verdicts from capital cases, thereby making the death penalty mandatory on return of a verdict of guilty as charged. Acts 1973, No. 125, § 1. The legislature also amended Art. 598, eliminating the reference to qualified capital verdicts.

We agree with defense counsel that the legislature made the change in Art. 598 in 1973 primarily for the purpose of bringing that article in line with Art. 817 as amended. We note, however, that the legislative enactments which followed the decision in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) did not include a return of Art. 598 to its former language, despite the fact that the jury could again return of a life sentence in a capital case. La.C.Cr.P. Art. 905 et seq. Unlike the defense, we find that silence too ambiguous to draw any firm conclusions with regard to the legislature's intentions. In any event, given the constitutional status of the right to appeal in Louisiana, the legislature could not unnecessarily trammel upon that right even if it chose to do so.
We note that other jurisdictions have dealt with this problem in different ways. In Shagloak v. State, 597 P.2d 142 (Alaska, 1979), for example, the Alaskan Supreme Court expressly declined to follow North Carolina v. Pearce, supra, and held as a matter of state law that an increased sentence after an appeal is never justified. The West Virginia Supreme Court adopted a similar approach in a two-tier trial de novo setting, refusing to apply Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), State v. Eden, 256 S.E.2d 868 (W.Va.1979).
Neither Shagloak v. State nor State v. Eden, supra, are death cases, although their holdings of course encompass the problem here. Other jurisdictions have met the question directly and adopted the result reached here for a variety of reasons: People v. Henderson, 60 Cal.2d 482, 35 Cal.Rptr. 77, 386 P.2d 677 (1963); Commonwealth v. Littlejohn, 433 Pa. 336, 250 A.2d 811 (1969); Roberson v. State, 258 So.2d 257 (Fla. 1971), cert. dend., 409 U.S. 885, 93 S.Ct. 112, 34 L.Ed.2d 141 (1972). In view of our holding here, we express no opinion with regard to the prophylactic rules established in Alaska and West Virginia. With regard to the other decisions, we note only that their rationale, if not their result, have been undercut at least in part by the decisions in North Carolina v. Pearce and Chaffin v. Stynchcombe, supra; insofar as they rest on double jeopardy or due process considerations.